### Youndts' Appeals.

*Taxation — Mercantile license tax — Butchers—Retailer—Act of May 2, 1899.*

A butcher who buys cattle, slaughters them, cuts them into parts and makes sale thereof at market stalls is a retailer, and as such subject to the payment of a mercantile tax under the Act of May 2, 1899, P. L. 184.

Appeals from Board of Appeals. C. P. Berks Co., Aug. T., 1922, Nos. 92, 93 and 94.

*John B. Stevens* and *W. A. Witman, Jr.,* for appellants.

*Samuel E. Bertolet,* for mercantile appraiser.

BIDDLE, P. J., 9th judicial district, specially presiding, March 23, 1923.—The essential facts in these three cases are substantially the same, and they have been heard together throughout all the proceedings up to this time, and the same disposition will be made of them here. The appellants are retail butchers. They buy cattle, which they slaughter at slaughter-houses owned or rented by them at Muddy Creek, in Lancaster County, and a considerable portion of the meat from the cattle bought by them and slaughtered in Lancaster County is sold at market stalls in the markets of Reading in this county. The mercantile appraiser of Berks County rated each of the appellants as a retail dealer upon the volume of business admittedly done by them in Reading during the year 1921, and assessed a mercantile license tax against each one.

The appellants, contending that they are not subject to rating and tax as

4 D. & C.

dealers, took an appeal to the board of appeals, which board sustained the assessment and rating and dismissed the appeals, and from the decision of the board of appeals the appellants brought the present appeals to this court. Testimony was taken showing, in substance, the facts above recited.

Prior to the passage of the Act of May 2, 1899, P. L. 184, the decided weight of authority in this State was that a butcher dealing at retail, as do the present appellants, was not subject to a mercantile license tax; but, as we view the more recent determinations of the Supreme Court, this ruling has been changed, and parties dealing in meat products, as the present appellants have admittedly done, are held to be dealers and subject to a mercantile tax.

Admittedly, the appellants do not slaughter cattle of their own raising, but slaughter only such cattle as they purchase for the purpose of slaughtering in order that they may sell the products of the slaughtering. What was said by Judge McCarrell in the case of Com. v. Consolidated D. Beef Co., 242 Pa. 163, seems to apply fully here, to wit: "The defendant company simply takes the animal apart and disposes of the parts or pieces in their natural condition. . . . The defendant sells its products in their natural condition without having applied thereto any art, science, labor or process to change the form or condition thereof, and, in our opinion, the defendant is not carrying on manufacturing." In the case cited, the Supreme Court affirmed the lower court on Judge McCarrell's opinion, and that opinion is cited and approved in its later determination of Com. v. Consolidated D. Beef Co., 245 Pa. 605, where the facts were the same as those shown to exist in the earlier case.

Though in each of the cases cited the party endeavoring to avoid liability to the mercantile license tax was a wholesale dealer, while here each of the appellants is a retail dealer, we are unable to see that this constitutes any difference in principle. The ruling of the appellate court in each of the cases cited, as we understand it, was that the person dealing in the animal products was to be considered as a dealer and not as a manufacturer, and it was as a dealer that it was held to be subject to the tax, and not merely as a wholesaler.

It is true that some of the language used by Judge McCarrell in his opinion reported in 242 Pa. 163, might be regarded as supporting the contention of appellants that there is a distinction in principle between a wholesaler and a retailer, for he says: "The defendant company (a wholesale dealer) simply takes the animal apart and disposes of the parts or pieces in their natural condition. The purchaser of the respective parts applies to them such art, labor, skill or process as is necessary to change the parts into the desired product. The defendant sells its products as raw material, and others adapt the raw material to various uses by processes of manufacture."

Standing alone, this citation would seem to sustain the position of the appellants, but an examination of the whole opinion necessitates a different conclusion, for it shows that the "processes of manufacture" that he had in mind were such as resulted in a change in the character of the materials, as hides into leather, the flesh of hogs into hams, sausages, scrapple and lard, &c. But he goes on to point out that a farmer who slaughters an ox, cuts the carcass into quarters and makes sale thereof is not carrying on manufacturing.

So far as may be learned from the evidence in the present case, the appellants' business is entirely similar to that of the farmer used as the illustration by Judge McCarrell, and while it may be that they carried their "manipulation" somewhat farther than the farmer did, this would constitute merely a difference in degree and not in kind.

It is argued with much ability by the learned counsel for the appellants that a distinction was intended from the fact that the Act of 1899 contains a

definition of a wholesale dealer, and has no such definition of a retail dealer, but with this contention we are unable to agree. The act specifically describes what constitutes a wholesale dealer, and goes on to say that all dealers who do not come within that definition are to be regarded as retailers, and a definition by such exclusion is certainly as comprehensive and definite as one by mere description. As we view the purpose of the distinction between the wholesaler and the retailer, if any such distinction is drawn in the cases cited, it is to meet the provisions of the Act of 1899, which imposes a different rate of taxation upon wholesalers and retailers, and it was, therefore, essential that it should be determined in which class the dealer came in order that the rate of taxation might be definitely fixed.

And now, March 23, 1923, the appeal in each case is dismissed, at the costs of the appellants.

From Wellington M. Bertolet, Reading, Pa.